Julius E. KERN, Appellant,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellee.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant,

v.

Julius E. KERN, Appellee.

Nos. 16651, 16683.

United States Court of Appeals Eighth Circuit.

July 12, 1961.

Rehearing Denied Aug. 9, 1961.

Julius E. Kern, Clayton, Mo., pro se.

William W. Sleater, Jr., St. Louis, Mo., for Prudential Co. Fred W. Schwarz and Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., on the brief.

Before GARDNER, VOGEL and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This action was brought by plaintiff Kern to determine his rights under two policies of life insurance issued by the defendant—No. 11,335,891, a $10,000 modified whole life policy hereinafter called the whole life policy, and No. 31,000,481, a $49,000 five-year term policy, expiring June 4, 1956, with conversion privilege, hereinafter called the term policy. Both policies contain provisions for waiver of premium for total permanent disability. The issues presented by this appeal are those raised by the plaintiff's second amendment to complaint and answer thereto.[1]

Jurisdiction based upon diversity of citizenship and the requisite amount is established.

Upon the term policy, the court found that the policy by its terms had termi-

---

[1] The record in this case is somewhat confusing. Plaintiff has prepared his own briefs and has orally argued his case. By order of this court the case is heard upon the original record and typewritten briefs. Some issues raised in the earlier pleadings apparently are no longer in the case.

The trial court had previously entered a summary judgment for the defendant on the term policy here involved. This judgment was set aside upon plaintiff's motion. The court had likewise previously entered judgment after hearing for the plaintiff for refund of premiums on the whole life policy. Such judgment was also set aside by agreement of the parties with the stipulation that the record made in the earlier proceedings be a part of the record on this trial.

Plaintiff in his brief makes some claims with reference to policy No. 31,036,352, a $40,000 term policy. The court, in a previous final judgment entry which was not appealed from, found that this policy was owned by Julius E. Kern Co., Inc., now bankrupt, and dismissed plaintiff's complaint with reference thereto and hence such $40,000 term policy is not involved in this appeal.

nated and expired; that plaintiff had not exercised the conversion option afforded him by the policy at the time and in the manner required by the policy, and that defendant by its conduct did not repudiate its contractual obligation to convert so as to excuse plaintiff's compliance with the policy provisions relative to the exercise of the conversion option. The court's view of the law and the facts is set out in a memorandum opinion reported at 187 F.Supp. 398. Final judgment was entered in favor of defendant on the term policy and plaintiff has appealed from such judgment.

As to the whole life policy, plaintiff after receiving notice on February 16, 1956, that defendant no longer considered him to be totally disabled so as to entitle him to waiver of premiums, paid premiums for the year 1956 and subsequent years under protest. The amount of such premiums so paid is stipulated. The court found plaintiff was disabled within the meaning of the waiver of premium provision of the policy, and awarded plaintiff judgment for recovery of the premiums paid. Defendant has appealed from this portion of the judgment.

We shall first consider defendant's appeal from the judgment for plaintiff for return of premiums paid on the whole life policy.

The issue raised by this appeal is whether plaintiff in 1956 and thereafter remained totally disabled within the meaning of the policy provisions relating to waiver of premiums for total disability. It is undisputed that plaintiff had suffered a nervous breakdown in 1952 which resulted in hospitalization for a period and considerable medical and psychiatric treatment, which included electric shock and insulin. Plaintiff filed claim for waiver of premiums by reason of total disability and defendant in 1954 recognized that plaintiff was totally disabled since 1952 and waived premiums due on all policies it had issued to the plaintiff for a period subsequent to December 2, 1952, and refunded premiums which plaintiff had paid falling due on or after such date. Recognition of such disability continued until defendant on February 16, 1956, after it had investigated plaintiff's condition, advised plaintiff by letter that it no longer considered him totally disabled and that the policies were restored to a premium paying basis.

The whole life policy defines total disability as follows:

"The disability must be total in its nature to an extent sufficient to render the Insured incapable of performing any work or engaging in any occupation for remuneration or profit. The benefits of these provisions shall not be allowed or continued if, during any period for which such benefits are claimed, the Insured has applied for or accepted employment for wages or salary or has engaged in any business for profit."

In the court's memorandum opinion of May 20, 1959 (not reported), adopted by reference in the opinion reported in 187 F.Supp. 398, 400, the court fully considers and discusses the applicable law and relevant facts, and with reference to the law states:

"The Missouri courts have adopted what is known as the liberal interpretation of the disability provisions in insurance policies. The extent to which the courts go with respect to this matter is governed to some extent by the policy provisions in question, in that the provisions in some policies are like the provisions in the policy before the court, while others fix the liability of the insurer upon the disability of the insured to prosecute his occupation or the occupation stated in the policy. The policy provisions in this case, however, fix liability upon the disability of the insured from performing any work or engaging in any occupation for remuneration or profit. They are quite similar to the provisions of the policies in the Wiener [Wiener v. Mutual Life Ins. Co. of New York, 352 Mo. 673, 179 S.W.2d 39] and Glore [Glore v. Metropolitan Life

Ins. Co., Mo.App., 153 S.W.2d 770] cases, supra.

"The Missouri courts have repeatedly held, as was held in the case of Heald v. Aetna Life Insurance Company [340 Mo. 1143], 104 S.W. 2d 379, that the disability clause of a life policy does not mean, as its literal interpretation would require, a state of absolute helplessness, but rather that the disability contemplated means inability to do all the substantial and material acts necessary to the prosecution of the insured's business, or in many instances, any business or occupation in a customary and usual manner. Under the provisions in the policy before the court, this, of course, would not mean the insured's business, but rather, would mean any business or occupation.

"In the Wiener case [179 S.W. (2d) 39], at page 42, the court had this to say:

" ' *   *   * The policy in the instant case covers disability from following any gainful occupation. Therefore, such theory properly applies here and is consistent with the general rule, which the Heald case approves, that a person is totally disabled when his infirmity prevents him from doing "all the substantial and material acts" of his occupation. The word "all" in the general rule is used in the sense of the whole, meaning the sum total. However, it comprehends only those duties which are material and substantial. Incidental or occasional acts are not included. But a provision in an insurance policy covering disability which prevents the insured from following any gainful occupation must be given a practical interpretation to serve the purpose of such insurance so that it becomes effective when a person is prevented by disability from successfully engaging in an occupation for which he is fitted.

" 'Accordingly we hold a person is totally disabled when he cannot perform in the usual manner enough of the substantial and material duties of his occupation to be able successfully to continue his occupation or, in such a case as this, any gainful occupation for which he would be fitted.'

"And so, under the Missouri decisions the question before the court is: Did the plaintiff perform in the usual manner enough of the substantial and material duties of the gainful occupations which he followed during the period in question to determine that he was not totally disabled within the provisions of the policy?"

The insurance contracts before us are Missouri contracts. Thus, Missouri law governs in their interpretation.

It is quite true, as recognized by the trial court, that literally interpreted the disability provision in the policy here under consideration relates to the insured's disability to engage in any occupation for remuneration or profit and does not limit it to disability to engage in his own occupation. Substantial support is found in the Missouri cases cited by the trial court for the test of total permanent disability stated by the trial court in the last paragraph of the quotation from its opinion hereinabove. Other Missouri cases supporting the liberal interpretation of disability clauses relating to the insureds' inability to pursue any occupation and holding that the existence of permanent disability ordinarily presents a fact issue, are: Stearns v. Prudential Ins. Co. of America, 235 Mo.App. 135, 140 S.W.2d 766; Comfort v. Travelers Ins. Co., Mo.App., 131 S.W. 2d 734; Albert v. Metropolitan Life Ins. Co., Mo.App., 95 S.W.2d 343; Stoner v. New York Life Ins. Co., Mo.App., 90 S. W.2d 784; Kane v. Metropolitan Life Ins. Co., 228 Mo.App. 649, 73 S.W.2d 826; Katz v. Union Central Life Ins. Co., 226 Mo.App. 618, 44 S.W.2d 250.

The disability provision in the Stoner case, supra, [90 S.W.2d 787] contained the added provision, "if the insured per-

forms any work, or follows any occupation, or engages in any business for remuneration or profit, no further income payments shall be made nor premiums waived," which is substantially similar in effect to the last sentence of the disability provision in our present case.

Appleman Insurance Vol. 1 § 671, pp. 832–34, states:

"Even if this policy provision is so worded as to deny benefits unless the insured is totally disabled from following *any* occupation, the better rule has apparently been to hold that this refers to any occupation from which the insured has been accustomed to gain his livelihood, and to permit recovery precisely the same as if the clause referred to the insured's ordinary vocation. There are, however, a few gleanings from the field of jurisprudence which enforce this clause as written and deny recovery if the insured is able to carry on *any* business or vocation, whether his own or another. Missouri, when faced with such an argument, stated bluntly that the provisions so construed would be invalid, and in order to give it validity, the term *any* would be taken to refer to any occupation which the insured is then carrying on, or with which he is familiar."

Heald v. Aetna Life Ins. Co., 340 Mo. 1143, 104 S.W.2d 379, is cited in support of the last portion of the foregoing quotation.

In 45 C.J.S. Insurance § 980c, page 1175, it is said, "some authorities hold that, notwithstanding the policy provides that insured must be disabled from performing duties pertaining to any business or occupation, a disability is sufficient if it disables insured from following his usual or stated occupations."

▇▇▇ There are, of course, cases holding to the contrary and there are, as pointed out by the defendant, Missouri cases which appear to give a disability clause a somewhat stricter construction. However, we believe that it may be fairly said that there is a strong trend manifested by the Missouri cases, some of which we have cited, to give a very broad and liberal interpretation to a disability provision relating to the insured's inability to carry on any occupation. In a diversity case, we go no further than to determine that the trial court reached a permissible conclusion upon the basis of the law of its state. Homolla v. Gluck, 8 Cir., 248 F.2d 731. We have repeatedly stated that we will not attempt to outpredict or outforecast the trial judge on a doubtful question of local law.

We are satisfied that the trial court reached a permissible conclusion upon the basis of Missouri law in interpreting the disability clause here involved.

The trial court found that when the legal test it stated is applied to the facts that plaintiff was totally disabled under the terms of the waiver of premium provision. The trial court summarized and analyzed the evidence on the disability issue in its memorandum opinion filed May 20, 1959, which it re-adopted as a basis for the judgment appealed from. Plaintiff, before his disability, owned and operated a substantial insurance agency. While plaintiff may have exaggerated to some extent his prior earnings and evidence thereon is rather indefinite, the court under the evidence was fully justified in determining that the plaintiff was unable to carry on many of the material and substantial duties of the occupation for which he was trained and thus unable to rise up to his former earning capacity. It is quite true that plaintiff received some fairly substantial compensation for his services in the 1955–1959 period but such compensation was considerably below his earnings in his predisability period. There is evidence that his work was largely of an errand boy type of activity and that the services he performed were under supervision rather than of the managerial type of activity previously engaged in. One of plaintiff's employers testified that the salary paid was more than he earned and that the employment was motivated largely by charitable impulses. There

was medical testimony that plaintiff's recovery had not progressed to the extent of enabling him to perform the type of work and services he performed prior to his disability.

■ Without further discussion, we state that we have carefully examined the record and cannot say that the trial court's findings on the disability issue are clearly erroneous. The defendant has not demonstrated that the judgment for premium refund on the whole life policy was based upon an erroneous view of the Missouri law or that such judgment was not supported by substantial evidence. Upon defendant's appeal, the judgment for plaintiff for the return of premiums paid on the whole life policy is affirmed.

We now reach for consideration the plaintiff's appeal from the judgment dismissing his complaint relating to the term policy. The policy No. 31,000,481 is clearly a term policy. The policy so states both upon its face and back cover. The body of the policy expressly provides for payment of the face upon insured's death within the term period. The term period runs for five years from the date of the policy, to wit, June 4, 1951. The following provision is found both on the face and back cover of the policy:

"Term Policy. Premiums Payable for Number of Years Specified Herein or until Prior Death. Insurance Payable Only at Death during the Term Period. Convertible as Provided Herein but Non-Renewable. Annual Dividends. Waiver of Premium Benefit in Event of Total and Permanent Disability as Limited and Defined Herein. Accidental Means Death Benefit as Limited and Defined Herein."

On the back cover in large printing, under the heading "Important Notice", is the following:

"This is a Term Policy, and Expires at the End of the Term Period stated on the first page."

The application attached to the policy shows that the insured applied for a five-year term policy.

The term policy contains no provision for reserves, cash surrender value, extended or paid up insurance or any other non-forfeiture provision. The policy is similar in some respects to the Missouri policy we held to be a term policy in Sterneck v. Equitable Life Insurance Co. of Iowa, 8 Cir., 237 F.2d 626.

■ A distinction between whole life insurance and term insurance is recognized in Missouri. Term insurance is wholly inconsistent with whole life insurance. Term insurance provides coverage only for a limited, fixed number of years specified in the policy. Richardson v. Life Insurance Company of Missouri, Mo., 341 S.W.2d 802, 804; Doty v. American Nat. Ins. Co., 350 Mo. 192, 165 S.W.2d 862, 869, 143 A.L.R. 1062.

Plaintiff held college degrees in commerce and law and had devoted many years to operating his own insurance business which included life insurance. He makes no specific claim that this policy provides any other coverage than term insurance or that he was in any way misled by the policy provisions.

It is established beyond question that the term policy expired by its terms on June 4, 1956, and that the term policy was not renewable. The policy contains no provision for extension during periods of disability.

The policy does contain a provision giving the insured an option to convert his term policy into certain specified types of whole life insurance, said option commencing as follows:

"Upon proper written application and legal surrender of this Policy to the Company at the Home Office while this Policy continues in force, it may be converted, subject to the following provisions and to the conditions set forth below, to another form of policy issued by the Company."

The conversion privilege and the conditions precedent to the exercise of the

conversion option are set out in detail in the policy. The conversion option, among other things, provides that the waiver of premium for total disability provision will be incorporated in the new policy to be issued upon the exercise of the conversion option.

The trial court correctly found that the plaintiff did not before the expiration of his term policy make written application for conversion or tender the term policy or the premiums, or meet any of the conditions for the exercise of the conversion option prescribed by the term policy. Plaintiff does not claim that he ever made any application for conversion except for the filing of his suit some three months after the expiration of the term policy, nor does he claim that he tendered the term policy or the premiums.

The trial court, in a well-reasoned opinion, which cites and discusses Missouri cases, demonstrates that it was completely justified in determining that the conversion privilege was in the nature of an option which by its terms required an election or acceptance in the time and manner prescribed in the term policy to become effective. The trial court held that since the plaintiff had not met the terms and conditions of the option, he could claim nothing thereunder in that all of plaintiff's rights under the term policy had expired under the express terms of the policy, which provided for its termination and expiration on June 4, 1956.

Defendant on February 16, 1956, advised plaintiff that it considered plaintiff was no longer entitled to waiver of premiums because of total disability. Notice of premiums due on certain policies was given plaintiff but no such notice was given as to premiums on the term policy here involved as no further premium was due on such policy prior to its expiration date. As to this policy, the letter stated: "The five year term will expire June 4, 1956, on Policy 31 000 481. You will hear from our Actuarial Division about this policy before the expiration date."

On April 23, 1956, plaintiff received from defendant a form letter reading as follows:

"This is an important notice about your Term insurance policy. The privilege of converting your policy will expire soon. We are sending you this notice somewhat in advance so that you can have continuous insurance protection.

"Your policy states that it may be converted to a permanent form of insurance. This change is *not automatic*. It will be made only at your request provided that such request is made *prior* to your 65th birthday or the expiration of the Term policy, whichever occurs first.

"Premiums for the new policy will, of course, be greater than those for your Term policy. The first premium on the new policy must be paid before the conversion privilege expires. There is no grace period for payment of the first premium.

"The Company office to which you pay your premiums will be glad to furnish figures and to assist you in completing the necessary form for conversion."

Plaintiff contends that the demand for premium payment upon conversion of the term policy was wrongful and that defendant by making such demand repudiated its contractual obligation to convert, and that an election by plaintiff was excused because it would have been a vain or useless act to make election and tender the policy.

As to premium demand, the trial court states:

"It does not appear from the evidence that defendant's denial of disability (while wrongful as a matter of law) was made in bad faith, and hence, that the requirement of payment of premium in event of conversion was for the purpose of defeating all liability. The investigation made by defendant's representative, upon which its action was based disclosed a situation which supported a

literal interpretation of the policy provisions for termination of the disability benefits. The notices of February 16, 1956, and April 23, 1956, were made in good faith in accordance with defendant's interpretation.

"The action is on an option of which time is of the essence, which option was not exercised and which was terminated by its own terms three months before suit was filed." 187 F.Supp. 400–401.

The court then considered the issue of whether demand for premiums upon conversion excused plaintiff's failure to make timely election to convert and tender the term policy. The court, at pages 401–403, considers and discusses the applicable law, including Missouri cases, and then states:

"James on Option Contracts, Sec. 868, raises the question with which we are concerned: 'Is it possible that the conduct of the optioner may be such as to dispense with election?'

"The authorities cited in this memorandum, some of which are cited by James and some being of more recent date, are summarized by his conclusion:

" 'There may be conduct on the part of the optioner which will waive a timely exercise of the option right and notice thereof, or an insufficient or a conditional election, or a formal notice, but it is not believed that conduct on the part of the optionor, short of estoppel, can entirely dispense with an election of some kind brought to the knowledge of the optionor.'

"Defendant did not repudiate the contract. In fact, the notice of conditions necessary for exercise of the conversion affirm the privilege. Denial of disability amounted to a simple breach of contract. Trainor v. Mutual Life Ins. Co. of N. Y., 7 Cir., 131 F.2d 895; New York Life Ins. Co. v. Viglas, 297 U.S. 672, 56 S.Ct. 615, 80 L.Ed. 971. There was no inequitable conduct on the part of defendant amounting to estoppel.

"Equity is powerless to convert the option into a contract to insure, unless by some act of the option holder the option is vitalized into a contract."

The trial court at page 403 also considers and discusses our opinion in Rosenbloom v. New York Life Ins. Co., 8 Cir., 163 F.2d 1, and finds that the result it reached is in no way inconsistent with the views expressed by this court in Rosenbloom. We agree. In Rosenbloom the insured had advised the insurer of his desire to exercise the conversion option and his willingness to comply with all of the conditions precedent except with the company's requirement that the converted policy contain a war risk clause, which the court found to be illegal. In our present case, in contrast, the plaintiff made no election and made no offer to perform any of the conditions precedent to the exercise of the option. We recognized in the Rosenbloom case that the performance of conditions precedent to the exercise of the option is necessary unless legally excused but found that under the circumstances of that case legal excuse existed.

■ We believe that the trial court was entirely justified in determining that the defendant did not by its conduct repudiate its obligation with reference to conversion rights. Defendant did nothing to estop itself from insisting upon the conditions precedent to the exercise of the conversion option. The April 23 letter, heretofore set out, relied upon as a repudiation appears to recognize the conversion option and to contain a friendly warning that the conversion was not automatic and that affirmative action upon the part of the plaintiff was necessary and offers assistance in completing "the necessary form for conversion."

The requirement of a written election to convert served a number of useful purposes. Plaintiff was afforded the choice of several policies and could elect to convert all or any part of the $49,000

term insurance. Plaintiff could also elect whether to carry the related accidental death coverage and could fix within certain limits the issue date of the converted policy. All of these matters would affect the premium rate and the amount of reserve the defendant would have to set up upon the policy. While the amount of premium due might not be of importance to the insured as long as he was entitled to waiver of premium, it would become a matter of importance to him in event his permanent disability ceased.

No hardship would be imposed upon the insured in meeting the requirements of the conversion option other than those relating to premium payments. The premium payments could have been made under protest, as was done on the whole life insurance policy, or the plaintiff could have met all conditions except the premium payment and gambled upon prevailing on the waiver of premium issue. In any event, the record does not disclose that the plaintiff put the defendant to the test and that the defendant made a final and unqualified refusal to convert the policy without prepayment of premium.

Plaintiff makes some rather indefinite claim that "if insured is sick and attempts to change his policy, compliance with written requirements is excused." Frakes v. Brotherhood of Locomotive Firemen, Mo.App., 204 S.W. 26, relied upon by plaintiff, does not support his contention.

█ Plaintiff does not plead that he was incompetent to contract in 1956 when the conversion option expired, nor is there proof to support such a contention. The court in its fact findings expressly found that plaintiff was under no disability which would prevent him from timely requesting the policy conversion. Such finding is supported by substantial evidence and is not clearly erroneous. Consequently, we are not confronted with and do not pass upon what the situation might be under Missouri law if plaintiff were in fact mentally incompetent at the time he was required to make the election. But see Amiot v. Kansas City Life Ins. Co., 6 Cir., 109 F.2d 916; Walters v. Mutual Life Ins. Co., 4 Cir., 64 F.2d 178; 3 Appleman Insurance § 1871.

█ Plaintiff also claims that by virtue of §§ 442.530, 442.550, and Chapters 376, 7–8, V.A.M.S., relating to reserves and non-forfeiture provisions of life insurance policies, reserves existed which were sufficient to keep the term policy in force and effect. Such issue does not appear to have been raised in the pleadings or considered by the trial court, and hence cannot be raised for the first time upon appeal. In any event, we consider such contention to be without merit. The term policy makes no provision for surrender value, reserve value, or other non-forfeiture benefits and such provisions are not required in term policies such as this. See § 376.670, subd. 12 V.A.M.S.; Richardson v. Life Insurance Company of Missouri, supra; 3 Appleman Insurance § 1916, page 541.

█ Plaintiff contends that the option requirement of written application and surrender of the term policy was waived by an agent of the company, now deceased. Such contention is without merit for the reasons assigned by the trial court in its opinion filed February 10, 1959, reading:

"Two obstacles stand in the way of this argument. First, as plaintiff as an experienced insurance agent must have known, and as the policy clearly provides, the agent with whom plaintiff dealt had no authority to waive the requirements of the policy relative to conversion. Secondly, under the provisions of Section 491.010 of the Revised Statutes of Missouri commonly referred to as the dead man's statute, the statements of defendant's deceased agent are not admissible in evidence against it. Johnson v. Dur-East [Est] Inc. [Mo. App.], 224 S.W.2d 611, and State [ex rel. State Highway Commission] v. Jacobs [Mo.App.], 281 S.W.2d 597."

We have carefully considered all errors raised by the plaintiff, including some not herein specifically discussed, and find them to be without merit. Plaintiff has had a fair trial and he has failed to demonstrate that the judgment dismissing the complaint relating to the term policy was induced by any erroneous view of the law. All material factual findings upon which the judgment is based are supported by substantial evidence.

The judgment appealed from is in all respects affirmed, both as to plaintiff's appeal and as to defendant's cross-appeal.